DECISION.
This appeal arises from a dispute concerning ownership and improper use of a Ferrari racing car and its components. The plaintiff-appellant, ASR Investments Corporation, alleged that the defendant-appellee, Doran Enterprises, Inc., a company that provides racing-team services, improperly used the engine belonging to ASR's racing car by installing the engine in another racing car, which was then run in a seven-hour race. ASR appeals from the order of the trial court awarding ASR $1,000 on its conversion claim and $39,033 to Doran on its counterclaim for the value of racing services rendered.
In its three assignments of error, ASR asserts that the trial court improperly relied upon hearsay testimony in reducing the amount of damages on its conversion claim, and that the court further erred by awarding damages to Doran, on its counterclaim, upon the alternative bases of implied contract or unjust enrichment. For the reasons that follow, we affirm.
ASR claimed damages in the amount of $26,000 as a result of Doran's conversion of the racing car's engine. The trial court rejected that amount, however, on the basis of the testimony of Kevin Doran. Doran's testimony indicated that ASR had already been compensated in the same amount by defendant Moretti Racing, Inc., with whom ASR had been in a dispute concerning ownership of the Ferrari from which the engine had been removed. Doran testified that he knew that Moretti, as part of its settlement with ASR, had credited ASR with $26,000 (the diminution in the value of the engine after a seven-hour race) in arriving at the final amount ASR was to pay for the vehicle.
ASR, in its first assignment of error, argues that the trial court erred in its reliance on Doran's testimony because it constituted inadmissible hearsay. In ASR's view, Doran could only have possessed such knowledge about the settlement between ASR and Moretti on the basis of statements made to Doran by Moretti.
Doran responds, and we agree, that this argument fails because it is clear from the record that Doran was part of the settlement negotiations between Moretti and ASR. Doran testified that he had been present during the actual negotiations and had personally contributed the formula for computing the diminution in the value of the engine. Further, he testified that he knew "in fact" that Moretti gave a credit to ASR for the resulting amount. Ruling on ASR's hearsay objection, the trial court specifically found that Doran's testimony was based upon his personal knowledge. As Doran points out, counsel for ASR did not establish otherwise on cross-examination. In sum, the record does not support ASR's contention that Doran's testimony was hearsay under Evid.R. 801(C).
ASR also argues under its first assignment of error that the trial court failed to recognize or give effect to paragraph 13 of the settlement agreement between ASR and Moretti, in which the parties agreed that nothing in the agreement would constitute a release of the claims ASR had against Doran. This argument, however, misses the point. Regardless of the agreement between ASR and Moretti with respect to ASR's claims against Doran, the trial court could not have awarded damages that it did not believe existed as a result of the settlement.
ASR's first assignment of error is, therefore, overruled.
In its second and third assignments of error, ASR challenges the decision of the trial court to award Doran $39,033 on its counterclaim. The trial court awarded the damages on the basis of what it believed to be a contract between the two parties for the provision of racing services or, alternatively, upon a theory of unjust enrichment.
ASR first challenges the trial court's finding of an implied contract for the racing event referred to as the "Daytona Finale." According to ASR, such a contract could not have existed because, under the terms of the written 1996 Race Services contract between ASR and Doran, ASR was required to provide both written notice to Doran of the need for its services and payment in advance. We disagree. First, both these contract requirements appear to have been for the benefit of Doran and presumably were subject to waiver by Doran. Second, we agree with Doran that ASR's reliance on this argument is misplaced in light of the testimony of Gerald Jackson, president of ASR, in which he fully acknowledged that his company owed money to Doran. The amount, in fact, represented the unpaid balance of a total invoice of $79,033, upon which ASR had paid $40,000. In a letter dated January 6, 1997, ASR promised that the balance would "be promptly paid" when ASR was in receipt of certain sponsorship proceeds. Jackson was then asked at trial, "So you were invoiced for $39,033 for the Daytona Finale, and you paid partial payment of $40,000. And you acknowledge in your letter of January 6th of 1997 that the balance of $39,033 is owed, yet you have not paid that; is that correct?" Jackson replied, "Correct."
Finally, ASR argues that it could not have been found to owe the money under a theory of unjust enrichment, as it did not act "unjustly." ASR made the same argument to the trial court, which correctly pointed out that the "unjust" in "unjust enrichment" refers to the unfairness of one party receiving a benefit for which it has not paid — not whether the actions of the party receiving the benefit are unjust.
Accordingly, all three of ASR's assignments of error are overruled, and the judgment of the trial court affirmed.
 __________________________ Per Curiam.
GORMAN, P.J., SUNDERMANN and SHANNON, JJ.